UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

CAROL A. DAVIS,                          )
                                         )
     Plaintiff,                          )
                                         )
     vs.                                 )   CAUSE NO.  1:03-cv-1208-SEB/VSS
                                         )
STATE FARM FIRE AND CASUALTY             )
COMPANY,                                 )
                                         )
     Defendant.                          )

### ENTRY ON PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT AND DEFENDANT'S CROSS MOTION FOR PARTIAL SUMMARY JUDGMENT

On January 26, 2005, the Court entered its Entry Denying Plaintiff's Motion for Summary Judgment and Granting Defendant's Cross Motion for Partial Summary Judgment.  In response to this ruling, Defendant State Farm Fire and Casualty Company ("State Farm") filed a Motion for Clarification and/or Reconsideration of Court's January 26, 2005 Ruling on Duty to Defend, and Plaintiff Carol A. Davis filed a Motion for Reconsideration of Court's January 26, 2005 Order Ruling on Indemnity. Both of these motions are **GRANTED** to the extent that they ask the Court to reconsider the January 26, 2005, ruling.[1]  The Court has reconsidered it prior ruling and hereby **VACATES** it in its entirety.  Having reexamined the original motions for summary judgment, and being duly advised, we now **GRANT** State Farm's Motion for Partial Summary Judgment and **GRANT IN PART AND DENY IN PART** Ms. Davis's Motion for Summary Judgment to the extent and for the reasons set forth below.

---

[1]We regret that our purblindness required additional briefing efforts by the attorneys.

## SUMMARY JUDGMENT STANDARD

Federal Rule of Civil Procedure 56(c) provides that summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to summary judgment as a matter of law."  In determining whether a genuine issue of material fact exists, "a trial court must view the record and all reasonable inferences drawn therefrom in the light most favorable to the non-moving party."  *Robin v. Espo Engineering Corp.*, 200 F.3d 1081, 1088 (7th Cir. 2000).  The non-moving party, however, cannot rest on the pleadings alone, but instead must identify specific facts to establish that there is a genuine triable issue."  *Bilow v. Much Shelist Freed Denenberg Ament & Rubenstein, P.C.*, 277 F.3d 882, 893 (7th Cir. 2001).

## FACTUAL BACKGROUND

The relevant facts are largely undisputed.  Ms. Davis's brother, John Ardis, named her as the beneficiary of a group life insurance policy he obtained through his employer, Ingersoll-Rand.  Upon Mr. Ardis's death, the Metropolitan Life Insurance Company ("MetLife") paid Ms. Davis $167,000.00 in life insurance benefits–$50,000.00 in basic coverage and $117,000.00 in optional additional coverage–as instructed by Ingersoll-Rand.  MetLife later was informed by Ingersoll-Rand that its original determination that Mr. Ardis was enrolled in the optional coverage was incorrect and that Mr. Ardis had only the basic life insurance benefit of $50,000.00.  By letter dated

2

May 20, 2002, MetLife advised Ms. Davis of Ingersoll-Rand's error and asserted that it was entitled to have $117,000.00 ("the Overpayment")[2] returned to it.  Ms. Davis asked MetLife to document its claim that she was entitled to only $50,000.00; when it failed to do so (at least to her satisfaction), Ms. Davis declined to return the $117,000.00 to MetLife, having already used a portion of it to purchase a home for her parents.

On November 7, 2002, MetLife filed suit against Ms. Davis pursuant to 29 U.S.C. § 1132(a)(3) alleging that Ms. Davis had been unjustly enriched by the Overpayment and asking that it be awarded "restitution in the amount of the Overpayment, plus interest and costs, and MetLife's attorney's fees, pursuant to 29 U.S.C. § 1132(g)."  MetLife also asserted a claim for unjust enrichment under state law.  Exhibit 2 to Plaintiff's Motion for Summary Judgment (MetLife's Complaint).

By letter dated January 23, 2003, Ms. Davis notified her insurer, State Farm, of MetLife's suit against her and requested that State Farm defend and indemnify her pursuant to her homeowner's insurance policy ("the Policy").  Exhibit 4 to Plaintiff's Motion for Summary Judgment.  State Farm responded in a February 6, 2003, "reservation of rights" letter to Ms. Davis and a letter to Ms. Davis's counsel in which it stated that it reserved its right to deny coverage because it believed it was "questionable" whether Ms. Davis's policy would cover the allegations in MetLife's complaint.  Exhibit 5 to Plaintiff's Motion for Summary Judgment.  State Farm's letter to

---

[2]We use the shorthand term "the Overpayment" rather than "the Alleged Overpayment" for simplicity's sake.  We express no opinion regarding the merits of MetLife's claim.

Ms. Davis's counsel further stated:  "We have agreed to reimburse you for the reasonable cost incurred in your defense of this action on her behalf from the date we were notified of the lawsuit until such time that it may be determined that there is no duty to defend or duty to indemnify."  *Id.*  On March 17, 2003, State Farm informed Ms. Davis's counsel that "[a]fter careful review of this claim, we have determined that there is no coverage for our insured under her Homeowner's policy" but that, pursuant to the terms set forth in the February 6, 2003, letter, "we will reimburse you for reasonable defense costs from February 4, 2003 until April 17, 2003 or 30 days from the date of this letter."  Exhibit 6 to Plaintiff's Motion for Summary Judgment.  State Farm's letter set forth certain provisions of the Policy upon which it based its determination; those provisions are set forth and discussed at length below.

On June 16, 2003, Ms. Davis settled her claim with MetLife.  Pursuant to the agreement, Ms. Davis paid MetLife $55,453.24.  Ms. Davis retained the remainder of the $117,000.00, plus "all interest earned on the $117,000 from the date it was paid, January 25, 2002, through the date of settlement, June 23, 2003, approximately $13,178.96 ($25.64 per diem at the statutory rate of 8% X 514 days)."  Plaintiff's Statement of Material Facts ¶ 14.

On July 2, 2003, Ms. Davis's counsel sent an itemized bill to State Farm seeking $16,768.58 for defense costs incurred between January 23, 2003, and April 17, 2003.  Exhibit 9 to Plaintiff's Motion for Summary Judgment.  State Farm has since tendered to Ms. Davis defense costs in the amount of $14,678.38.

4

DISCUSSION

Ms. Davis asserts that State Farm had a duty under the Policy to defend and indemnify her against MetLife's suit.  Specifically, she alleges that the provision of the Policy entitled "Coverage L – Personal Liability" ("Coverage L") is applicable to MetLife's claim against her, and therefore she is entitled to recover from State Farm the $55,453.24 that she paid to MetLife to settle the suit, as well as all of the defense costs she incurred for the duration of the suit.

Ms. Davis's claims hinge on the meaning of Coverage L.  The manner in which we are to interpret insurance policy provisions is well-settled under Indiana law, which the parties agree is the applicable law.

> The construction of an insurance policy is a question of law for which summary judgment is particularly appropriate.  Insurance policies are contracts that are subject to the same rules of construction as are other contracts. When the language of an insurance contract is clear and unambiguous, we will assign to the language its plain and ordinary meaning.  An insurance policy that is unambiguous must be enforced according to its terms, even those terms that limit an insurer's liability.  Thus, we may not extend insurance coverage beyond that provided by the unambiguous language in the contract. . . .  An insurance contract will be deemed ambiguous only if reasonable people would honestly differ as to the meaning of its terms.  However, an insurance contract is not regarded as ambiguous simply because controversy exists, and the parties have asserted contrary interpretations of the language of the contract. We also note that where provisions limiting or excluding coverage are ambiguous, they are to be construed in favor of the insured in order to further the basic purpose of indemnity.

*Amerisure, Inc. v. Wurster Const. Co., Inc.*, 818 N.E.2d 998, 1001-02 (Ind. App. 2004) (citations omitted).  Finally, we note that the duty to defend and the duty to indemnify

under the Policy are not coterminous; an insurer's duty to defend is broader than its coverage liability or duty to indemnify. *Illinois Farmers Ins. Co. v. Wiegand*, 808 N.E.2d 180, 184 (Ind. App. 2004), *trans. denied.*  Keeping these principles in mind, we address in turn below the issues of whether State Farm has duty to indemnify Ms. Davis and whether it had a duty to defend her.

<u>Duty to Indemnify</u>

The provision of the Policy at issue, Coverage L, reads as follows:

If a claim is made or a suit is brought against an insured for damages because of **bodily injury** or **property damage** to which this coverage applies, caused by an **occurrence**, we will:

   1.   pay up to our limit of liability for the damages for which the insured is legally liable; and

   2.   provide a defense at our expense by counsel of our choice.  We may make any investigation and settle any claim or suit that we decide is appropriate.  Our obligation to defend any claim or suit ends when the amount we pay for damages, to effect settlement or satisfy a judgment resulting from the **occurrence**, equals our limit of liability.

An "occurrence" is defined in the Policy as "an accident . . . which results in . . . bodily injury or property damage."  "Property damage," in turn, is defined as "physical damage to or destruction of tangible property, including loss of use of this property."

State Farm correctly argues that MetLife's claim against Ms. Davis does not fall

under Coverage L because it does not involve an "occurrence."[3]  Under the Policy, an

"occurrence" must be "an accident."  The only relevant action on the part of Ms. Davis

was refusing to return the Overpayment to MetLife.  This refusal was not "an accident,"

which Ms. Davis notes is defined as "a befalling; an event that takes place without one's

foresight or expectation; an undesigned, sudden, and unexpected event; chance;

contingency . . . ."  Plaintiff's Brief at 10 (quoting *Webster's Revised Unabridged

Dictionary* (1998 Ed.)); *see also State Farm Fire & Cas. Co. v. C.F.*, 812 N.E.2d 181,

184 (Ind. App. 2004), *trans. denied* (2005) ("We have previously stated, however, that

'[i]n the context of insurance coverage, an accident means an unexpected happening

without an intention or design.'") (quoting *Terre Haute First Nat'l Bank v. Pacific

Employers Ins. Co.,* 634 N.E.2d 1336, 1338 (Ind. App. 1993))).

There was nothing accidental about the fact that Ms. Davis did not return the

Overpayment to MetLife.  Ms. Davis argues that "[f]rom Ms. Davis' standpoint, the

receipt of the $117,000 and MetLife's later claims placed her in a situation she never

sought" and therefore "[f]rom Ms. Davis's perspective, the events leading up to the suit

were accidental."  Plaintiff's Brief at 11.  However, Ms. Davis was not sued for receiving

the Overpayment; she was sued for failing to return it when asked to do so.  Thus, the

relevant question under the Policy is whether the action that formed the basis of

MetLife's claim against Ms. Davis–her failure to return the Overpayment–was an

_____

[3]State Farm advances several other arguments that we need not address
because we find this one to be dispositive.

accident. Clearly it was not.[4]

The situation in this case is analogous to those in *City of Jasper v. Employers Ins. of Wausau*, 987 F.2d 453 (7th Cir. 1993) and *Red Ball Leasing, Inc. v. Hartford Acc. & Indem. Co.,* 915 F.2d 306, 309 (7th Cir. 1990).  In the former, the City of Jasper issued two building permits to Charles Habig, who began construction pursuant to the permits. Neighboring landowners filed suit alleging that the permits were improperly issued in violation of a local zoning ordinance; the neighbors eventually prevailed in their suit.  Mr. Habig then sued the City, alleging that it was negligent in issuing the invalid permits. The Seventh Circuit held that the facts alleged in Mr. Habig's complaint did not constitute an occurrence as that term was defined in the City's insurance policy, and

---

[4]Ms. Davis argues that she "did not intend to take or keep anything that did not belong to her" and cites several cases for the proposition that "intentional acts are covered under Indiana law, so long as the damaging consequences are not subjectively intended."  *See* Plaintiff's Reply at 9-10.  These cases are all distinguishable, however. *Auto-Owners (Mut.) Ins. Co. v. Stroud*, 565 N.E.2d 1093 (Ind. App. 1991), involved a policy that defined occurrence as "an accident, including continuous or repeated exposure to conditions, which results in bodily injury or property damage neither expected nor intended from the standpoint of the insured"; the remainder of the cases did not involve the question of whether there was an "occurrence," but instead addressed the application of policy provisions that excluded coverage for bodily injury or property damage *intentionally caused by the insured.  See PSI Energy, Inc. v. Home Ins. Co.*, 801 N.E.2d 705 (Ind. App. 2004), *trans. denied* (addressing the "expected or intended damage defense" and defining issue as whether PSI "'expected' or 'intended' the property damage at issue"); *Coy v. National Ins. Ass'n*, 713 N.E.2d 355, 360 (Ind. App. 1999) (policy excluded coverage for "bodily injury or property damage caused intentionally by or at the direction of the insured."); *Stout v. Underhill*, 734 N.E.2d 717 (Ind. App. 2000), *trans. denied* (2001) (policy provided for coverage of damages resulting from "bodily injury," but contained an exclusion if the bodily injury was "expected or intended from the standpoint of the insured.").  Under those policy provisions it is relevant whether the *result* of the insured's action was intended, whereas under the provision at issue in this case it is only relevant whether *the insured's action* was "an accident," that is, an "unexpected happening without an intention or design."

therefore the insurer had no duty to defend the city in that suit.  While Ms. Davis

correctly points out that the definition of "occurrence" in that policy was not identical to

the one in Coverage L, the court's holding was based solely on the fact that the City's

issuance was not an "accident," which the court defined as "an unusual, unexpected,

and unforeseen event."  The court reasoned:

> What happened here, stripped to its essentials, is that an 'action,' not an 'accident,' of the City granted Mr. Habig the right to build two duplexes on his land, to the unhappiness of his neighbors who thereupon filed suit. . . . Plainly, by the allegations of the complaint itself, the City's action was prompted by its conclusion that it was authorized by the zoning ordinance and quite as plainly after much litigation, the Court of Appeals of Indiana concluded that it was not.  But the City's error and the fact that the property damage could have been avoided does not transform the intended action into an "accident."

*City of Jasper*, 987 F.2d at 457 (footnote omitted).

Similarly, in *Red Ball Leasing,* the insured, Red Ball, had repossessed four trucks

based upon erroneous information in its accounting system.  The owner of the truck

sued Red Ball for conversion, and Red Ball requested that its insurer defend it in the

action.  The Seventh Circuit held that the repossession of the trucks was not an

"occurrence" under the policy because it was not an "accident":

> There is no doubt that Red Ball intended to repossess the trucks; that action clearly was not an accident. However, Red Ball asserts that the *conversion* was accidental, because Red Ball believed that it had a right to repossess the trucks. This argument relies on a reading of the policy that would allow coverage when the insured volitionally commits an act, but the decision to commit the act is based on erroneous or mistaken information.

9

*Red Ball Leasing, Inc.,* 915 F.2d at 309 (emphasis in original).  However, the court concluded, "[a] volitional act does not become an accident simply because the insured's negligence prompted the act."  *Id.* at 311.

Ms. Davis attempts to frame the issue not as whether she intentionally kept the Overpayment, but as whether she "intentionally sought to keep money *that she knew was not hers."*  Plaintiff's Reply at 7 (emphasis altered).   The fact remains, however, that, like Red Ball and the City of Jasper, Ms. Davis acted intentionally, albeit perhaps based on mistaken or incomplete information.  Whether Ms. Davis's refusal to return the Overpayment was legally correct is irrelevant to the question of whether it was intentional.  *See City of Jasper*, 987 F.3d at 457 n. 3 ("We need not speculate as to whether the legal interpretation which prompted the City to grant the permit was correct (in the ultimate sense) . . . .  It is enough for our own purposes here to observe that, if what the City did was  an 'action' it was *not* an 'accident,' and whether the action was negligent or the final decision of Indiana's courts is incorrect is essentially irrelevant to our conclusions here.") (emphasis in original).

Because Ms. Davis's actions in withholding repayment of the money from MetLife were not accidental, there was no "occurrence," and therefore there is no coverage–and no duty to indemnify–under the Policy.

<u>Duty to Defend</u>

We have already noted that the duty to defend is broader than the duty to indemnify, and therefore our determination that State Farm has no duty to indemnify

Ms. Davis does not necessarily resolve her duty to defend claim.  However, "we determine the insurer's duty to defend from the allegations contained within the complaint and from those facts known or ascertainable by the insurer after reasonable investigation," and "[i]f the pleadings reveal that a claim clearly is excluded under the policy, then no defense is required."  *Wiegand*, 808 N.E.2d at 184.  That is the case here; for the reasons already discussed, the allegations in MetLife's complaint clearly indicate that there was no "occurrence" which would trigger coverage under the Policy, and therefore State Farm had no duty to defend under the Policy.

However, State Farm agreed to pay for Ms. Davis's defense under a reservation of rights for the period from January 23, 2003, through April 17, 2003.[5]  State Farm does not deny that it agreed to and is obligated to pay these costs, although it disputes the reasonableness of the hourly rate charged by some of Ms. Davis's attorneys.  On July 2, 2003, Ms. Davis's counsel sent State Farm a letter along with an itemized bill seeking $16,768.58 for defense costs incurred between January 23, 2003, and April 17, 2003.  Exhibit 9 to Plaintiff's Motion for Summary Judgment.  State Farm has since tendered to Ms. Davis defense costs in the amount of $14,678.38.  State Farm arrived at this sum by starting with the fees sought in the July 2, 2003, letter and adjusting the hourly rates of two of Ms. Davis's attorneys downward to rates it deemed to be more reasonable.

---

[5]Actually, State Farm agreed to reimburse Ms. Davis "for the reasonable costs incurred" in her defense of MetLife's claim from the date it was notified of the claim (which we know was sometime between January 23, 2003, and February 6, 2003) until such time as it determined it had no duty to defend or indemnify her (which was March 17, 2003, although it later agreed to extend the time period for an additional 30 days). The Court does not understand State Farm to be quibbling over whether the relevant time period began on January 23, 2003, or some later date.

*See* Mullins Affidavit, Exhibit C to Defendant's Response.  However, Ms. Davis has submitted the detailed and thorough affidavit of Attorney Steven C. Shockley that supports her position that the rates charged by her attorneys were reasonable, *see* Shockley Affidavit at ¶ 9, Exhibit 11 to Plaintiff's Motion for Summary Judgment, and State Farm offers no evidence to contradict Mr. Shockley's affidavit or to support its position that the alternate (lower) rates it has chosen are reasonable.[6]  Mr. Shockley's affidavit also supports Ms. Davis's position that the services performed by her attorneys and the time billed for them were reasonable, with the exception of three specific billed items[7] that total $96.50.  *Id.* at ¶ 8.  In light of State Farm's written agreement to pay Ms. Davis's reasonable defense costs during the relevant time period and the uncontroverted evidence of record that all but $96.50 of the defense costs sought by Ms. Davis are reasonable, the Court determines that Ms. Davis is entitled to defense costs in the amount of $16,672.08 (the $16,768.58 represented by the billing records

---

[6]The record indicates that during a February 4, 2003, telephone call between State Farm Claim Representative Yolanda Hutton and Brett Nelson, one of Ms. Davis's attorneys, Ms. Hutton offered on behalf of State Farm "to pay $110.00 an hour to defend Ms. Davis pursuant to a reservation of rights" and Mr. Nelson represented either that he (according to Mr. Nelson's version) or his firm (according to Ms. Hutton's version) normally charged $150.00 an hour and that he did not have the authority to deviate from this rate.  Affidavit of Yolanda Hutton at ¶¶ 4-6, Exhibit D to Defendant's Response; Affidavit of Brett Nelson at ¶¶ 4-5, Exhibit to Plaintiff's Reply.  Ms. Hutton then "represented that State Farm was willing to pay a billable rate within this range."  Hutton Affidavit at ¶ 7.  However, the Court does not understand State Farm to take the position that this telephone call represented an agreement to limit the hourly rate State Farm would pay to $150.00; indeed, State Farm has agreed to pay one of Ms. Davis's attorneys an hourly rate of $183.00 (reduced from his normal rate of $365.00).

[7]The affidavit specifies four items that Mr. Shockley characterizes as services "not typically charged to clients" because they are "more in the nature of 'the cost of doing legal business' than legal services to the client."  *Id.* at ¶ 8.  However, one of the four items occurred on January 17, 2003, outside of the relevant time period.

minus $96.50).  Since State Farm already has paid $14,678.38, Ms. Davis is entitled to

judgment in the amount of $1,993.70.

        SO ORDERED:  06/24/2005

SARAH EVANS BARKER, JUDGE
United States District Court
Southern District of Indiana


Copies to:

Stuart R. Buttrick
BAKER & DANIELS
srbuttri@bakerd.com

Jan N. Campbell
LEEUW OBERLIES & CAMPBELL, P.C.
jcampbell@indylegal.net mpate@indylegal.net;jokeefe@indylegal.net

David A. Given
BAKER & DANIELS
dagiven@bakerd.com rkosbour@bakerd.com

Bart A. Karwath
BARNES & THORNBURG
bart.karwath@btlaw.com

Brett E. Nelson
PLEWS SHADLEY RACHER & BRAUN
bnelson@psrb.com

George M. Plews
PLEWS SHADLEY RACHER & BRAUN
gplews@psrb.com